# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE JACKSON, | Case No. 1:16-cv-00148 DAD DLB PC |
| Plaintiff, | ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS |
| v. | |
| R. DAVIS, et al., | |
| Defendants. | THIRTY-DAY DEADLINE |

## I.     Screening Requirement and Standard

Plaintiff George Jackson, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on February 2, 2016.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

**II.     Discussion**

    **A.     Plaintiff's Allegations**

Plaintiff is currently incarcerated at Valley State Prison ("VSP") in Chowchilla, California, which is where the events giving rise to this action occurred. Plaintiff brings this action against the following defendants: Federal Medical Receiver J. Clark Kelso; VSP Chief Medical Executive P. Virk; Deputy Director of Policy and Risk Management Services J. Lewis; VSP Chief Physician and Surgeon N. Malakkla; VSP Medical Doctor W. Zhang; VSP Nurse Practitioner Patricia Johnson; VSP Nurse Practitioner D. Maddox; California Department of Corrections and Rehabilitation ("CDCR") Secretary J. Beard; VSP Warden R. Davis; VSP Warden R. Fisher, Jr.; VSP Associate Warden D. Roberts; VSP Associate Warden J. Porras; CDCR Captain J. Waybright; CDCR Correctional Lieutenants A. Musleh, J. Alvara, J. Anderson, and R. Warren; and CDCR Correctional Sergeants M. Fondren and J. Stockbridge.

On January 22, 2010, Plaintiff reported to Mule Creek State Prison medical clinic and complained of "teeth chattering from pain in all fingers. Rated 10/10 pain and all fingers had poor circulation. Digits 1, 2, and 3 were solidly white. Digits 4 and 5 are charcoal grey nearly black." (Pl.'s Compl. at 4.) Plaintiff was diagnosed with Raynaud's Disease. Raynaud's Disease is a circulatory disorder caused by insufficient blood supply to the hands and feet resulting in Cyanosis, numbness, and pain. Cyanosis is a bluish discoloration of the skin caused by inadequate oxygenation of the blood. Exposure to cold, drafts of air, or fans exacerbates the disease and causes Plaintiff extreme pain to the hands and feet, and aggravates Plaintiff's chronic back problems. Plaintiff alleges that VSP was fully aware of these risks.

Plaintiff complains that he wasn't given reasonable accommodation on January 22, 2010, or March 8, 2010, in light of the diagnosis.

On April 20, 2010, Plaintiff filed a habeas corpus petition in Amador County Superior Court.  An informal response was requested from Defendant J. Clark Kelso.

On June 11, 2010, Plaintiff saw Rheumatologist Shamir Cohen. Cohen found objective evidence of Raynaud's Disease and recommended that Plaintiff be housed in a warmer bunk.

On June 25, 2010, Defendant J. Clark Kelso submitted his Proposed Action Plain ("PAP") to the Honorable Don Howard in Amador County Superior Court. The PAP was accepted by the court. The PAP was integrated and implemented by Lewis De Barraigua, M.D.

On July 16, 2010, a Comprehensive Accommodation Chrono ("CAC") was generated by Physician's Assistant Todd. On July 23, 2010, a Permanent Cell Living Only Chrono was generated. Plaintiff states these accommodations were sufficient to protect him from the risk of sustaining injury.

On July 11, 2011, Doctor Naseer rescinded the CAC without cause or sound medical reasoning, thereby placing Plaintiff at risk of life and limb. On July 19, 2011, Plaintiff submitted a written complaint to the Office of J. Clark Kelso. Subsequently, Dr. Naseer was permanently relieved of his duties.

On May 25, 2012, Plaintiff was moved to Tehachapi State Prison where a staff physician renewed the CAC and prescribed: "No exposure to cold drafts of air or fans." (Pl.'s Compl. at

11.)

On October 17, 2012, Plaintiff was transferred to VSP. Initially he was housed in a dormitory which was insufficient to accommodate what was prescribed in the CAC. Subsequently he was housed in a single-man cell in Facility A, Building A-3, Second Tier, Upper B Section, due to the fact it is the warmest section of the building in the winter. These required housing accommodations were provided until July 19, 2013.

On July 19, 2013, Plaintiff was called to the Facility A Program Office and informed that it was Defendant Warren's intention to move him back to a dormitory. Plaintiff advised Warren that such a move would be detrimental to his health and safety, and he requested that Warren review his medical file. Upon doing so, Warren arbitrarily concluded that he could not substantiate Plaintiff's condition. Plaintiff presented him with the medical chrono. Nevertheless, two days later Plaintiff was moved to a dorm in D4-12-01L in spite of what was prescribed in the CAC.

On August 2, 2013, Plaintiff filed a CDCR-602 Appeal to grieve his housing accommodations. Defendant Fondren interviewed Plaintiff with the intent to procure a solution to the appeal. The result was a stipulation that the appeal would be withdrawn if Plaintiff was accorded what was prescribed in the CAC.

On September 29, 2013, after the hearing on his appeal, Plaintiff was moved back to a cell in A-3. Even after the move was facilitated by Defendant Fondren, subordinate custody staff claimed that no CAC could be verified. The cell he was given was inadequate per the CAC. The cell caused him to be exposed to cold, drafts of air, and fans.

On October 20, 2013, Plaintiff requested medical attention due to pain and suffering associated with his living conditions. He was not seen and submitted a subsequent request.

On November 27, 2013, Defendant Toor renewed a CAC that indicated Second Tier Housing Only. It was updated and corrected on December 6, 2013, and updated again on January 13, 2014, by Dr. Connan. On August 6, 2014, Defendant Zhang renewed the CAC again indicating Second Tier Housing Only, with no exposure to cold, drafts of air, or fans.

On or about March 16, 2014, due to routine facility maintenance, all inmates were told to move to alternate cells for 24 hours while maintenance crew painted the cells. At this time,

Plaintiff was approached by Defendant Musleh who inquired whether Plaintiff could be moved as well.  Plaintiff agreed to be moved if staff would abide by the CAC.  Musleh expressed his frustration with the CAC and provided the minimal accommodations to Plaintiff.  Musleh stated, "I don't like the fact that you have this chrono, and I am going to see to it that it is taken away. I don't think you need it or should have it." (Pl.'s Compl. at 12-13.)

On March 29, 2014, Plaintiff sent correspondence to the Warden concerning the upcoming moves.  On April 5, 2014, Defendant Musleh responded to Plaintiff stating, "you will not be move [sic] from your currently assigned cell." (Pl.'s Compl. Ex. 13.)

On July 3, 2014, Plaintiff filed an appeal to address chronic back pain and the lack of adequate medical treatment.

Beginning on August 15, 2014, Defendant Musleh retaliated against Plaintiff by arbitrarily moving him five times in a five-day period.  Defendant Musleh harassed and tormented Plaintiff, and Plaintiff became suicidal.  Plaintiff suffered nervous breakdowns and sought medical attention for an emergency evaluation and treatment by mental health staff.  Plaintiff was prescribed 25mg of Visteral for anxiety, depression and insomnia.

On September 3 and 4, 2014, Defendant Musleh harassed Plaintiff at work change.  On September 3, 2014, Plaintiff filed a staff complaint against Defendant Musleh.  Plaintiff alleges the complaint was screened out fictitiously.

Following Plaintiff's submission of his staff complaint, Defendant Musleh stated to Plaintiff, "I got this one won already, CIM baby, CIM baby, CIM"  "CIM" refers to the California Institute for Men in Chino, California.  Musleh's comments were followed by similar verbal harassment and innuendos on a daily basis. Approximately one week later, Plaintiff was informed that he was being subjected to an adverse transfer and reclassified under the guise of "High Risk Medical."  The proposed transfer would place Plaintiff at CIM.  CIM only has three-walled cells which would result in Plaintiff being subjected to conditions not compliant with what is prescribed in his CAC.

On September 12, 2014, Plaintiff was prescribed cell-living only by mental health doctors.

On October 7, 2014, Plaintiff was summoned to the Correctional Counselor's office.  At

that time, CCI Harris informed Plaintiff that he was being transferred, and further informed him that he would be scheduled for a Unit Classification Committee ("UCC") hearing.

On October 9, 2014, Plaintiff objected to the adverse transfer by filing a CDCR-22 inmate request form.

On October 12, 2014, Plaintiff submitted a written complaint to the office of J. Clark Kelso regarding the lack of adequate medical care.

On October 24, 2014, Plaintiff was brought before the UCC where he was informed that he would be transferred to CIM. The committee refused to inform Plaintiff why he was being transferred. They stated it was a medical decision but declined to explain the reasons. Defendant Johnson rescinded Plaintiff's Second Tier Housing restriction on the CAC.

On October 30, 2014, the transfer was denied by Classification Senior Representative C. Christian.

On November 16, 2014, Defendant Musleh arbitrarily moved Plaintiff from a single man cell in Facility A-3 to an eight-man dorm. This was contrary to medical housing restrictions and the mental health restrictions of September 12, 2014. Plaintiff reminded Musleh and staff of his housing prescriptions pursuant to his CAC and he was issued an inflammatory CDCR-128A Counseling Chrono.

On November 28, 2014, Plaintiff filed an appeal to address his needs and lack of adequate medical care.

On December 1, 2014, Plaintiff filed an appeal to address the inadequate housing and violation of his prescribed medical housing. On December 18, 2014, Plaintiff wrote a letter to the warden to address the failure to process his complaint of December 1, 2014. On December 28, 2014, Plaintiff wrote a letter to the Director of Internal Affairs in an effort to have VSP process the complaint. To date, the appeal has not been processed. Plaintiff alleges that Warden Fisher, Jr., and VSP administration have maliciously circumvented the appeal process to protect their own. On February 17, 2015, Plaintiff received a response from M. Osborn in relation to the letter to the O.I.A. Director.

On May 27, 2015, Plaintiff filed another appeal against VSP to address living conditions.

On December 11, 2015, Rheumatologist Specialist Roshan Kotha's recommendation was denied.

On January 15, 2016, a second recommendation was made, "He should be re-housed in an area with a warmer cell." (Pl.'s Compl. at 5.)

Plaintiff complains that he is currently housed in an eight-man dorm which does not comply with the prescribed accommodations. He alleges he suffers from chronic back pain, stiffness, pain, loss of control of fingers, hands, toes and feet on a daily basis as a result. He further complains that the proposed transfer to CIM is retaliatory and without reason, and will result in cruel and unusual conditions since CIM does not have four-walled cells and therefore cannot accommodate Plaintiff's condition.

**B.     Linkage**

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77, 129 S.Ct. 1937, 1948-49 (2009); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed under a theory of *respondeat superior*, and some causal connection between the conduct of each named defendant and the violation at issue must exist. *Iqbal*, 556 U.S. at 676-77; *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa County*, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012). ).

Here, Plaintiff fails to link several named defendants with any actions demonstrating that those defendants personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. Plaintiff names J. Clark Kelso as a defendant, however, he does not provide any instance where Kelso was personally involved in placing him in inadequate living conditions. In fact,

7

Kelso submitted a Proposed Action Plan to the Amador County Superior Court concerning Plaintiff's medical condition and living arrangements, and the plan was accepted by the court. Plaintiff states he wrote several letters to Defendant Kelso complaining of his conditions, but there is no indication that Kelso ever received these letters or that he personally acted to deny Plaintiff's rights.

Plaintiff complains that Defendant Fondren failed to intervene, take disciplinary or other action to cure the failure to provide reasonable accommodations. However, there are no facts alleged showing Fondren directly or personally failed to intervene. The only facts alleged show Fondren did in fact intervene and grant Plaintiff his request to move back to a cell on Facility A-3. Plaintiff complains that subordinates failed to provide him with the right cell, but there is no indication that Fondren was responsible, and liability may not be imposed based on *respondeat superior* alone.

Plaintiff complains that Defendant Zhang failed to provide the prescribed treatment of specialists as set forth in the Proposed Action Plan, but there are no facts alleged demonstrating how Zhang personally failed to act. The only facts alleged show that Zhang did in fact renew the CAC with indication that Plaintiff be provided with Second Tier Housing only, with no exposure to cold, drafts of air, or fans.

Without any supporting facts, Plaintiff concludes: 1) Defendants Maddox, Malakkla, and Virk failed to provide the prescribed treatment of specialists as set forth in the Proposed Action Plain; 2) Defendant Lewis failed to ensure his subordinates provided adequate medical care; 3) Defendants Alvara and Stockbridge refused to carry out or simply ignored the prescribed and recommended housing accommodations; 4) Defendants Beard, Porras, Roberts, Waybright, and Anderson failed to intervene, or failed to take disciplinary or other action to cure the failure to provide reasonable accommodations; and 5) Defendant Malakkla conspired to obstruct justice by impeding Plaintiff from exhausting the grievance process. Plaintiff's conclusory allegations fail to state a plausible claim for relief.

Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks

omitted). However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983. However, that circumstance has not been presented here.

Plaintiff's conclusory allegation that Defendants Fisher, Jr., Johnson, and Malakkla obstructed justice by impeding Plaintiff from exhausting the grievance process is insufficient to support a plausible claim for relief. *Iqbal*, 556 U.S. at 676-77, 129 S.Ct. at 1949-50; *Moss*, 572 F.3d at 969.

Accordingly, Plaintiff fails to state a claim against Defendants Kelso, Virk, Lewis, Malakkla, Zhang, Maddox, Beard, Fisher, Jr., Roberts, Porras, Waybright, Alvara, Anderson, Fondren, and Stockbridge.

### C. Eighth Amendment Claim – Medical Care

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) ), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

The Court accepts that Plaintiff's condition, Raynaud's Disease, satisfies the objective element of an Eighth Amendment. *Wilhelm*, 680 F.3d at 1122; *Lopez*, 203 F.3d at 1131. Plaintiff must therefore satisfy the subjective element. At the pleading stage, based on the allegations in the complaint the Court finds that Plaintiff states a cognizable claim against Defendants Musleh and Warren. As to Defendant Johnson, Plaintiff alleges that she rescinded his Second Tier Housing restriction. Without more, this allegation fails to present a plausible claim under the Eighth Amendment. Plaintiff fails to show how Defendant Johnson acted in conscious disregard of an excessive risk to his health, and that there was no reasonable justification for exposing him to such risk. *Lemire*, 726 F.3d at 1078 (citing *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)) (quotation marks omitted).

Accordingly, the Court finds that Plaintiff states a claim against Defendants Musleh and Warren.

### D.     Eighth Amendment – Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994); *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995 (1992). In order to state a claim, Plaintiff must allege facts sufficient to show that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. *E.g., Farmer*, 511 U.S. at 847; *Thomas v. Ponder*, 611 F.3d 1144, 1150-51 (9th Cir. 2010); *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010).

Based on the allegations in the complaint, the Court finds that Plaintiff presents a cognizable claim against Defendants Musleh and Warren.

### E.     Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to

be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Here, Plaintiff contends that Defendant Musleh retaliated against him when he moved Plaintiff five times over a five day period. Plaintiff states that on or about March 16, 2014, he was approached by Defendant Musleh about the necessity of moving Plaintiff along with all other inmates in Facility A-3. Plaintiff agreed. Musleh told Plaintiff, "I don't like the fact that you have this chrono, and I am going to see to it that it is taken away. I don't think you need it or should have it." On March 29, 2014, Plaintiff inquired with the warden about the proposed move. On April 5, 2014, Defendant Musleh responded by stating, "[Y]ou will not be move [sic] from your currently assigned cell." Then, beginning on August 15, 2014, Plaintiff claims Musleh retaliated by moving him five times in a five-day period. Musleh then harassed and tormented Plaintiff verbally.

As to these facts, Plaintiff fails to state a claim against Musleh. While Musleh allegedly took adverse action against Plaintiff by moving him five times over five days, Plaintiff does not allege the act was done because of any protected conduct, and that such action chilled his exercise of First Amendment rights.

On September 3, 2014, Plaintiff filed a staff complaint against Musleh. Later, Musleh told Plaintiff, "I got this one won already, CIM baby, CIM baby, CIM." Approximately one week later, Plaintiff was informed he would be transferred to CIM as "High Risk Medical." Plaintiff claims the transfer was retaliatory and would subject him to conditions violating his CAC.

With respect to these factual allegations, again Plaintiff fails to state a claim. Plaintiff

11

alleges he was engaged in protected conduct. However, he fails to allege how Musleh was personally responsible for the proposed transfer. Musleh may have been delighted in the proposed transfer, however, there is no indication he ordered it. Indeed, according to the facts in the complaint, Plaintiff was brought before a Unit Classification Committee which informed him that he was going to be transferred.

Therefore, Plaintiff fails to state a claim of retaliation.

### F.     Conspiracy - § 1985

To state a cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. *Gillispie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980); *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S.Ct. 1790 (1971). A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (quotations and citation omitted). Restraint must be exercised in extending section 1985(3) beyond racial prejudice. *Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) (citation omitted).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together. *Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 626 (9th Cir. 1988). A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. *Id.*; *Sanchez v. City of Santa Anna,* 936 F.2d 1027, 1039 (9th Cir. 1991).

Here, Plaintiff does not show how any defendants conspired together to deny Plaintiff his rights. In addition, there are no facts alleged that defendants acted with a racial or class-based discriminatory animus. Accordingly, Plaintiff fails to state a claim of conspiracy under §1985.

### G.     Conspiracy - § 1983

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th

Cir. 2001) (quoting *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Franklin*, 312 F.3d at 441 (quoting *United Steel Workers*, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. *Empress LLC v. City and County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Id*. at 1964-65 (internal quotations and citations omitted). As such, a bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Here, Plaintiff's allegations are speculative. There are no facts showing that defendants came to an agreement to deny Plaintiff his constitutional rights. Plaintiff merely concludes that a conspiracy existed. This is insufficient to present a claim of conspiracy.

**H.     Appeal Process**

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)).

**III.    Conclusion and Order**

Plaintiff's complaint states the following cognizable claim: (1) cruel and unusual punishment in violation of the Eighth Amendment by Defendants Warren and Musleh. It does not state any other claims against any other Defendants.

If Plaintiff files an amended complaint, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Further, Plaintiff is notified that his amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

If Plaintiff chooses to amend, this will be his final opportunity. If Plaintiff is willing to proceed on his cognizable claim, he may notify the Court in writing. The Court will then dismiss Plaintiff's other claim(s) and Defendant(s), and provide Plaintiff with further instructions regarding service of a summons and the complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff must either:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only on the cognizable claim identified above.

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: **July 6, 2016**              /s/ *Dennis L. Beck*
                                     UNITED STATES MAGISTRATE JUDGE