# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE JACKSON,<br><br>                Plaintiff,<br><br>   v.<br><br>R. DAVIS, et al.,<br><br>               Defendants. | Case No.  1:16-cv-00148 DAD DLB PC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITIONER'S MOTIONS FOR PRELIMINARY INJUNCTION<br><br>[ECF Nos. 2, 8, 10] |

     Plaintiff George Jackson ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

     This action is proceeding on Plaintiff's complaint against Defendants: Federal Medical Receiver J. Clark Kelso; VSP Chief Medical Executive P. Virk; Deputy Director of Policy and Risk Management Services J. Lewis; VSP Chief Physician and Surgeon N. Malakkla; VSP Medical Doctor W. Zhang; VSP Nurse Practitioner Patricia Johnson; VSP Nurse Practitioner D. Maddox; California Department of Corrections and Rehabilitation ("CDCR") Secretary J. Beard; VSP Warden R. Davis; VSP Warden R. Fisher, Jr.; VSP Associate Warden D. Roberts; VSP Associate Warden J. Porras; CDCR Captain J. Waybright; CDCR Correctional Lieutenants A. Musleh, J. Alvara, J. Anderson, and R. Warren; and CDCR Correctional Sergeants M. Fondren and J. Stockbridge.  By separate order the Court has screened the complaint and determined that Plaintiff stated a claim under the Eighth Amendment against Defendants Warren and Musleh.

1

The Court found no other cognizable claims against the remaining Defendants. Plaintiff was granted leave to notify the Court of his willingness to proceed with the cognizable claims, or file an amended complaint.

Now pending before the Court are Plaintiff's motions for preliminary injunction, filed on February 2, 2016, May 9, 2016, and June 9, 2016.

Plaintiff states he suffers from Raynaud's Disease which is a circulatory disorder caused by insufficient blood supply to the hands and feet resulting in Cyanosis, numbness, and pain. Exposure to cold, drafts, or fans exacerbates the condition and causes Plaintiff extreme pain to the hands and feet and aggravates Plaintiff's chronic back problems. Plaintiff states he was diagnosed with Raynaud's Disease in 2010 and examining doctors prescribed certain accommodations including: single-cell housing on an upper tier level, and no exposure to cold air, drafts, or fans. These restrictions were stipulated to in a case before the Amador County Superior Court by Plaintiff and Federal Receiver J. Clark Kelso. Thereafter, Plaintiff was provided the prescribed accommodations.

Plaintiff states he was moved to an eight-man dormitory on November 16, 2014, where he has been housed ever since. He complains that this housing violates the medically prescribed plan of treatment and causes him to be exposed to cold air, drafts, and fans. As a result, he claims he suffers from pain to his extremities on a daily basis.

On February 2, 2016, Plaintiff requested a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Plaintiff seeks immediate cell living, lower bunk, top-tier only, in the "B" section of A-3 Facility Housing Unit. He further requests that he be single-celled, or double-celled with a compatible cellmate with compatibility to be determined by Plaintiff. Plaintiff also asks that California Department of Corrections and Rehabilitation ("CDCR") be directed to purchase and provide Plaintiff with a portable electronic baseboard heater. Further, Plaintiff asks that he be examined by a qualified back specialist and rheumatologist in order that a course of treatment be established. Finally, Plaintiff requests an order directed to Defendant Musleh and his officers, agents, employers and other persons acting

in concert or participation with them restraining them from harassing, retaliating, or making Plaintiff wait in the cold for up to one hour to and from work.

On May 9, 2016, Plaintiff filed an amended request for injunctive relief seeking the same relief set forth in the February 2, 2016, motion.

On June 9, 2016, Plaintiff filed a request for an injunction to stop or rescind the inmate transfer order which CDCR has initiated at Valley State Prison.

**DISCUSSION**

**I.     Legal Standard**

A preliminary injunction is an "extraordinary remedy." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008) (internal citation omitted). When a court considers whether to grant a motion for a preliminary injunction, it balances "the competing claims of injury, . . . the effect on each party of the granting or withholding of the requested relief, . . . the public consequences in employing the extraordinary remedy of injunction," and Plaintiff's likelihood of success. *Id*. at 374, 376–77 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). In order to succeed on a motion for a preliminary injunction, the plaintiff must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 129 S.Ct. at 374.

An even more stringent standard is applied where mandatory, as opposed to prohibitory, preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "where a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir.1984). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will

result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir.1979). "[I]n doubtful cases" a mandatory injunction will not issue. *Id*.

### A. Likelihood of Success on the Merits

To succeed on a claim under 42 U.S.C. § 1983, the plaintiff must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir.1988) (internal citations omitted). The Ninth Circuit construes the second element to require that plaintiff show that a defendant deprived him "of a constitutional right, within the meaning of section 1983, [where] he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Id*. at 633 (internal quotation omitted). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id*.

The Ninth Circuit applies a less stringent standard for causation where plaintiffs seek injunctive relief as opposed to damages. *Id*. Because the inquiry here is whether plaintiff is likely to succeed on the merits of his claim for an injunction, the court need only address whether he is likely to show sufficient causation for injunctive relief. The circuit's standard for injunctive relief is "whether the combined acts or omissions of the state officials responsible for operating the state's penal system created living conditions that violate the" constitution. *Id*. While this analysis "undeniably focuses on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have caused the constitutional deprivation," it nonetheless "is broader and more generalized than when that same prisoner seeks damages for the harmful effects" of the constitutional violation. *Id*.

Here, it is unclear whether Plaintiff is likely to succeed. Plaintiff states that examining doctors initially prescribed single-cell living on the upper tier and advised that Plaintiff be insulated from cold air, drafts, and fans. Plaintiff also states that examining doctors have changed

4

the prescribed living accommodations over time. For instance, on June 11, 2010, rheumatologist Shamir Cohen only recommended that Plaintiff be housed in a warmer bunk. On July 11, 2011, Doctor Naseer rescinded the Comprehensive Accommodation Chrono ("CAC") in full. On September 12, 2014, the examining doctor recommended that Plaintiff be double-celled but this was based on a mental health condition rather than his physical condition. (Pl.'s Compl. Ex. 22.) The Medical Authorization Review Committee reviewed Plaintiff's case on September 12, 2014, and determined that Plaintiff's "no cold air, no fan, no draft" chrono was being accommodated in the lower tier, therefore, there was no need to order second tier housing only. (Pl.'s Compl. Ex. 24.) From February 10, 2015, to May 28, 2015, Plaintiff apparently had health care encounters but none concerned Plaintiff being exposed to cold air, drafts, or fans. On January 15, 2016, a rheumatologist specialist recommended that Plaintiff be re-housed in an area with a warmer cell. Plaintiff alleges he has been housed in a dormitory since November 16, 2014.

Based on the above, Plaintiff has not met his burden of persuasion demonstrating that Defendants have created living conditions for Plaintiff that violate the Constitution. Plaintiff states the current arrangement violates the 2010 medical orders, however, Plaintiff does not address whether the orders have changed since that time, and if so, what the current orders are. Thus, it cannot be determined if Plaintiff's current living arrangement comports with current medically prescribed living accommodations, and so it cannot be determined whether Plaintiff can succeed on the merits.

### B. Irreparable Injury

In order for the court to award a preliminary injunction, plaintiff must demonstrate that he is likely to suffer irreparable harm without preliminary relief. *Winter v. Nat'l Res. Def. Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008). Here, plaintiff seeks relief for alleged constitutional violations. Such violations generally constitute irreparable harm because they "cannot be adequately remedied through damages." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir.2009) (interpreting *Winter* and quoting *Nelson v. N.A.S.A.,* 530 F.3d 865, 881 (9th Cir.2008)). Plaintiff's alleged pain and suffering amounts to constitutional injury that cannot

be adequately remedied through damages.  As such, to the extent that plaintiff is likely suffering or likely to suffer injuries arising from his placement in a cell which does not meet medical requirements, his injuries are irreparable.  In other words, if "a trial on the merits shows that such [inhibition] violates [his] constitutional rights, [plaintiff] will have suffered irreparable injury." *Stormans, Inc.,* 586 F.3d at 1138.

### C. Balance of Hardships and Public Interest

The Court is persuaded that the balance of hardship tips in Plaintiff's favor to the extent he will suffer harm in the form of back pain, stiffness, pain and loss of control to fingers, hands, toe and feet on a daily basis if he is forced to live in housing accommodations that countermand what is medically prescribed.  Courts are expected to protect against physical harm to an individual over monetary costs to government entities. *See Harris v. Board of Supervisors, Los Angeles County*, 366 F.3d 754, 766 (9th Cir. 2004) ("[f]aced with [ ] a conflict between financial concerns and preventable human suffering, [the court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.")

Likewise, it will serve the public interest for prison officials to provide what is medically necessary for an inmate's healthcare, and certainly it is in the public interest for prison officials to comply with what the Constitution demands.  However, the public also has an interest in assuring that public funds are appropriately expended.  In this case, the Court finds that the public interest in providing Plaintiff with appropriate accommodations outweighs the financial considerations.

### D. Conclusion

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quotations and citations omitted) (emphasis in original).  A party seeking a temporary restraining order or preliminary injunction simply cannot prevail when that motion is unsupported by evidence.  Here, the Court finds that Plaintiff has not made a convincing showing of a likelihood of success on the merits or a high probability of irreparable harm, insofar as Plaintiff has not shown that his present living conditions violate the Constitution.

Plaintiff contends that his current living arrangement violates a plan recommended and put in place in 2010, but there is no evidence that it violates what is currently medically necessary. As noted above, a Medical Authorization Review Committee reviewed Plaintiff's case on September 12, 2014, and determined that Plaintiff's "no cold air, no fan, no draft" chrono was being accommodated in the lower tier, therefore, there was no need to order second tier housing only. (Pl.'s Compl. Ex. 24.) Therefore, Plaintiff's motion for injunctive relief concerning his request for a specific housing arrangement is DENIED without prejudice.

Similarly, Plaintiff's request for an injunction stopping a possible transfer of Plaintiff from VSP to CIM must be denied. Plaintiff alleges that the cells at CIM have only three walls, but there is no evidence that CIM cannot accommodate his medical condition.

Plaintiff also seeks mandatory injunctive relief in the form of an order directing Defendants to purchase a room heater for him. As noted above, "where a party seeks mandatory preliminary relief . . ., courts should be extremely cautious about issuing a preliminary injunction." *Martin*, 740 F.2d at 675. Only where the facts and the law clearly favor the moving party and extreme or very serious damage will result should a mandatory injunction issue. *See Anderson*, 612 F.2d at 1115. Here, there is no evidence that extreme or very serious damage will result if a heater is not provided to Plaintiff.

Finally, Plaintiff requests an order directed to Defendant Musleh and his officers, agents, employers and other persons acting in concert or participation with them restraining them from harassing, retaliating, or making Plaintiff wait in the cold for up to one hour to and from work. The request is conclusory and unsupported by any facts, and does not merit such an extraordinary and drastic remedy.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that Plaintiff's motions for preliminary injunction be DENIED without prejudice.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty

(30) days after being served with a copy, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __**July 6, 2016**__     /s/ *Dennis L. Beck*
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE